UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BARBARA VANLUE,                     )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        No.  4:11CV595 TIA
                                    )
MICHAEL ASTRUE, Commissioner        )
of Social Security,                 )
                                    )
                    Defendant.      )

## MEMORANDUM AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration.

The suit involves an application for Disability Insurance Benefits under Title II of the Act.

Claimant has filed a Brief in Support of her Complaint; the Commissioner has filed a Brief in

Support of his Answer. The parties consented to the jurisdiction of the undersigned pursuant to

28 U.S.C. § 636(c).

## I.    Procedural History

On January 5, 2008, Claimant Barbara Vanlue filed an application for Disability Insurance

Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.  (Tr. 71-8).[1]  In

the Disability Report Adult completed by Claimant and filed in conjunction with the applications,

Claimant stated that her disability began on January 31, 2006, due to rheumatoid arthritis, pain,

fatigue, stress, sleep apnea, and depression.  (Tr. 88, 92-101).  On initial consideration, the Social

---

[1]"Tr." refers to the page of the administrative record filed by the defendant with its Answer
(Docket No. 14/filed July 20, 2011).

Security Administration denied Claimant's claims for benefits. (Tr.40-45). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 47). On August 13, 2009, a hearing was held before an ALJ. (Tr. 18-35). Claimant testified and was represented by counsel. (Id.). Thereafter, on August 31, 2009, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 8-17). On February 12, 2011, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision after considering counsel's letter. (Tr. 1-5, 134-38). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on August 13, 2009

#### 1.  Claimant's Testimony

At the hearing on August 13, 2009, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 18-35). Claimant lives with her husband who works at Washington University. (Tr. 29). Claimant stands at five feet four inches and weighs approximately 240 pounds. (Tr. 32). Claimant cooks at home and does the laundry. (Tr. 33). Claimant has a driver's license and drives her children, ages thirteen and nine, to school. (Tr. 34). Claimant participates in their school activities so long as she is able to sit down. Claimant attends church. (Tr. 34).

Claimant testified that she last worked fifteen to twenty hours a week in 2001 at a Hawthorne Dental as a bookkeeper. (Tr. 22). Claimant testified that she stopped working because of arthritis, sleep apnea, and swelling of her feet. (Tr. 23). Claimant tried to return to work in 2006 for one week. (Tr. 22, 24-25).

Claimant testified that she has rheumatoid arthritis with osteoarthritis. (Tr. 25). Dr. Moeser treats Claimant. (Tr. 26). Claimant also has sleep apnea, which causes her to quit breathing at night and prevents a good night sleep. Claimant uses a CPAP machine when sleeping. (Tr. 28). Claimant takes a nap for two hours. (Tr. 29). Claimant has fatigue and restless leg syndrome. (Tr. 28). Symptoms of her depression include becoming upset, inability to do things, and crying spells. (Tr. 29-30). Claimant testified that her depression medicine, Effexor, helps alleviate the symptoms. (Tr. 30). Claimant was hospitalized in January 2007 because of chest pains. (Tr. 31).

Claimant testified that she can use her fingers with difficulty during the course of the day to open jars. (Tr. 26). On a bad, Claimant testified that she does not want to move. (Tr. 26). Five days a week Claimant has a bad day. (Tr. 27). Claimant spends most of the day lying down for six to seven hours. (Tr. 27). Claimant cannot type or manipulate items. (Tr. 28). Claimant's pain varies from day to day from a five to a nine on a scale of one to ten. (Tr. 28). Claimant testified that she cannot go up and down steps. (Tr. 30).

Claimant testified that she uses a motorized scooter to do the grocery shopping. (Tr. 27). Claimant has attempted to lose weight by going to water aerobics. (Tr. 32). Claimant lost twenty-five pounds. (Tr. 32). Claimant participates in water aerobics classes twice a week. (Tr. 33). With respect to her diet, Claimant testified that she tries to follow a food plan. (Tr. 33).

### 2. Forms Completed by Claimant

In the Missouri Supplemental Questionnaire, Claimant indicated that she uses a power wheelchair when she goes shopping. (Tr. 104). Claimant takes care of her two children ages eight and eleven by taking them to school, helping with homework, preparing food to eat, and

taking them to the doctor. (Tr. 105). Claimant indicated that she has a handicapped car tag. (Tr. 105). Since she stopped working, Claimant is still able to do the laundry and dishes while sitting on a stool, sometimes takes out the trash, and takes care of the banking and the post office. (Tr. 106). Claimant can shop for forty-five minutes to an hour every two weeks. (Tr. 106). Claimant reported being able to use a computer for thirty minutes. (Tr. 108). Claimant has a valid driver's license and is able to drive. (Tr. 108).

In the Function Report - Adult, Claimant's husband indicated that Claimant helps out at the children's school when there is a sit down job. (Tr. 112). Her husband reported that Claimant can vacuum, do the laundry, and clean. (Tr. 114). Claimant takes the children to school every day and attends their activities. (Tr. 116).

## III. Medical and Other Records

On referral, Dr. Ahmareen Khan, a pulmonary consultant, examined Claimant for possible sleep apnea on January 9, 2001. (Tr. 375). Claimant has a past history for asthma and rheumatoid arthritis. Claimant complained of excessive snoring and excessive sleepiness for the last 12-15 years. Claimant reported recently gaining 40 pounds over the last three to four years. Claimant reported her asthma as being under fair control using Maxair when she experiences wheezing. (Tr. 375). Dr. Khan diagnosed Claimant with probable sleep apnea, severe rhinitis, asthma, GERD, and rheumatoid arthritis. (Tr. 376). Dr. Khan prescribed Flonase. (Tr. 376).

In a follow-up visit on February 1, 2001 after using nasal steroids for three weeks, Claimant denied wheezing or chest pain. (Tr. 372). Claimant reported continued excessive daytime somnolence. Dr. Khan noted that Claimant was scheduled to have a sleep study. (Tr. 372). Dr. Khan noted Claimant to be free of any asthmatic exacerbations, and he started her on

two months of inhaled steroids because she continued to have intermittent episodes of wheezing. (Tr. 373).

On March 22, 2001, Dr. Khan noted that the sleep study confirmed the sleep apnea. (Tr. 370). Dr. Khan found that her sleep apnea is completely obliterated with the use of CPAP, and she also has periodic leg movement syndrome. Dr. Khan continued the use of CPAP and prescribed Levodopa. (Tr. 370).

In a follow-up visit on June 19, 2001, Claimant reported decreased daytime somnolence with improvement in her energy level, and her ability to breathe through her nose improved. (Tr. 369). Dr. Khan prescribed CPAP and Senomet and discharged Claimant to Dr. Meghjee's service. (Tr. 369).

After completion of another sleep study with her CPAP in place, Dr. Khan noted Claimant has very disruptive PLMS causing frequent arousals. (Tr. 368). Dr. Khan prescribed Klonopin and noted her asthma to be under control. (Tr. 368). On October 30, 2001, Claimant reported significant wheezing and sinusitis, decreased daytime somnolence, and more energy. (Tr. 366). Dr. Khan prescribed Klonopin and continued use of her CPAP. (Tr. 366).

In a follow-up visit on January 3, 2002, Claimant reported excessive daytime somnolence but this has improved significantly since starting CPAP and Klonopin. (Tr. 365). Dr. Khan noted Claimant should continue to use CPAP and Klonopin. (Tr. 365). On July 23, 2002, Claimant reported her asthma being under good control with her current medication regimen. (Tr. 364). Claimant reported being off her Sinemet for the last few weeks, and her leg movements have returned. Dr. Khan restarted Sinemet. (Tr. 364).

In a follow-up visit on February 25, 2003, Claimant reported no new upper respiratory illness. (Tr. 363). Dr. Khan continued her current medication regiment. (Tr. 363). On March 27, 2003, Claimant returned after a recent hospitalization with a severe asthma exacerbation secondary to an upper respiratory infection. (Tr. 362). Dr. Khan prescribed antibiotics. (Tr. 362). On May 8, 2003, Claimant reported tolerating her CPAP well. (Tr. 361). Dr. Khan continued her medication regimen and increased her Sinemet. (Tr. 361).

The March 10, 2003 Discharge Summary noted Claimant had been admitted for treatment of right lower lobe pneumonia and asthma exacerbation. (Tr. 179). Claimant's condition improved steadily after the initiation of antibiotics, steroids, and nebulizer treatments. The Discharge Diagnoses included right lower lobe pneumonia, asthma exacerbation, sinusitis, sleep apnea, depression associated with steroids, and rheumatoid arthritis. (Tr. 179).

On August 28, 2003, Claimant reported tolerating her CPAP well and being stable from an asthma standpoint. (Tr. 360). Dr. Khan continued her medication regimen. (Tr. 360).

In a follow-up visit on January 6, 2004, Claimant denied any complaints of chest pain, shortness of breath, excessive daytime somnolence, or leg cramps. (Tr. 358). Dr. Khan continued her medication regimen. (Tr. 359).

The June 3, 2004 radiography of Claimant's left knee showed tricompartmental osteoarthritic changes most severe in the medial knee compartment and to a lesser degree the patellofemoral compartment. (Tr. 198).

On September 23, 2004, Claimant reported tolerating her CPAP well and Sinemet controlling her periodic leg movement syndrome. (Tr. 356). Dr. Khan continued her medication regiment. (Tr. 357).

In a follow-up visit on April 14, 2005, Claimant denied any complaints of chest pain, dyspnea, or wheezing. (Tr. 354). Dr. Khan noted spirometry showed completely normal air flows. (Tr. 354). Dr. Khan continued her medication regimen. (Tr. 355). On August 16, 2005, Claimant reported tolerating CPAP well. (Tr. 352). Dr. Khan continued her Advair, Singulair, and Combivent medications and increased her Sinemet dosage. (Tr. 352-53).

The October 8, 2005 shoulder radiography revealed mild degenerative changes, and no acute fracture identified. (Tr. 195, 410).

On January 24, 2006, Dr. Moeser noted Claimant had an injection in her left shoulder and helped her mobility, but she still experiences some degree of pain. (Tr. 397). Claimant's weight is noted as 292 pounds. Dr. Moeser found decreased range of motion in her left shoulder with impingement at 90 degrees, bilateral knee crepitus, and decreased range of motion of her cervical spine. (Tr. 397). Dr. Moeser reviewed the November 7, 2005 treatment note and found that Claimant failed to have labs completed as he had requested. After discussing treatment options, Dr. Moeser recommended physical therapy for her left shoulder. (Tr. 397).

The March 15, 2006 pulmonary function report noted normal pulmonary function tests. (Tr. 160, 189).

On May 25, 2006, Claimant reported doing well until "over activity in playing a ballgame [*sic*]" causing left shoulder pain, decreased range of motion, and stiffness. (Tr. 395). Dr. Moeser noted her weight to be down to 284 pounds through dieting. Examination showed decreased range of motion in her left shoulder in all directions with no impingement but difficult lateral abduction beyond 80 degrees. Dr. Moeser noted that Claimant once again failed to complete lab work as ordered. Dr. Moeser continued Claimant's physical therapy treatment. (Tr. 395).

On August 29, 2006, Claimant reported some left shoulder pain from time to time with activity. (Tr. 393). Examination showed improved range of motion in her left shoulder but some difficulty beyond 135 degrees lateral abduction. Dr. Moeser found no need for intramuscular steroids. (Tr. 393).

In a follow-up visit on August 29, 2006, Claimant reported her asthma under good control. (Tr. 350). Claimant complained of excessive daytime somnolence despite being compliant with CPAP. (Tr. 351). Dr. Khan noted that Claimant had gained weight since her last sleep study. (Tr. 351). Dr. Khan scheduled Claimant to undergo CPAP titration sleep study and recommended weight loss. (Tr. 351). Dr. Khan continued her medication regimen. (Tr. 351).

The September 30, 2006, polysomnography report showed severe sleep apnea requiring an increase in CPAP pressures, severe obesity, and periodic leg movement syndrome. (Tr. 154, 187). Dr. Khan recommended weight loss to ideal body weight. (Tr. 155, 188).

On November 7, 2006, Claimant returned for follow-up treatment of her obstructive sleep apnea periodic leg movement syndrome ("PLMS") and asthma. (Tr. 348). Dr. Khan noted that the recent nocturnal polysomnography showed increased CPAP pressure requirement. Claimant reported her asthma being stable. (Tr. 348). Dr. Khan increased her CPAP pressure and ordered a chin strap and heated humidity. (Tr. 349).

Claimant sought treatment in the emergency room at Barnes-Jewish St. Peter's Hospital on January 8, 2007 for acute chest pain. (Tr. 269-70). The x-ray showed essentially a negative chest. (Tr. 263). Claimant was diagnosed with chest pain. (Tr. 265). The chest x-ray was an unremarkable study. (Tr. 282). As requested by Claimant, she was transferred to St. John's Mercy Hospital. (Tr. 323-24).

On January 14, 2007, Claimant reported chest discomfort to the doctor in the emergency room at St. John's Mercy Medical. (Tr. 271-72). Claimant was transferred as requested to St. John's after her stress test was read as abnormal. (Tr. 272). The cardiac catheterization showed mildly elevated LVEDP and global left ventricular function to be normal. (Tr. 294). Dr. George found there was no angiographic evidence for coronary artery disease and recommended Claimant continue with medications. (Tr. 295). The cardiac catheterization revealed no evidence of cardiac lesions so Dr. George opined her chest pains most likely from GERD and prescribed a trial of Nexium. (Tr. 273). The doctor noted that her chest pains are atypical, and she does have some risk factors including family history plus obesity and diabetes. (Tr. 275). Dr. George considered her asthma and rheumatoid arthritis to be stable. (Tr. 273).

On January 24, 2007, Claimant returned for follow-up of hospitalization. (Tr. 412). Claimant reported a history of asthma being well controlled on medications. Claimant reported a history of depression going back several years and feels she is doing well on Zoloft. Dr. Ryan noted she does not appear to have a history of anxiety. (Tr. 412).

The January 30, 2007 ultrasound of Claimant's abdomen showed increased echogenicity throughout her liver most likely due to fatty infiltration. (Tr. 438).

In a follow-up visit on January 31, 2007, Dr. Moeser noted Claimant's DJD doing well with no joint pain, stiffness, or swelling. (Tr. 391). Examination showed better left shoulder range of motion with lateral abduction up to 140 degrees. Dr. Moeser noted that Claimant did not comply with further laboratory testing. (Tr. 391).

On February 21, 2007, Claimant denied any history of anxiety. (Tr. 414). Dr. Ryan decided to switch Zoloft to Wellbutrin. (Tr. 414). On April 6, 2007, Claimant called and

requested an increase in the Wellbutrin dosage explaining that she has been weepy and crying. (Tr. 415).

On April 26, 2007, Claimant denied complaints of chest pain, dyspnea, and cough. (Tr. 346, 514). Claimant reported allergic rhinitis and tolerating CPAP well. Dr. Khan noted that Claimant continues to gain weight, and she is researching option of Lap Band procedure. (Tr. 346, 514). Dr. Khan discontinued Advair and prescribed Albuterol, Singulair, Rhinocort, and Mirapex. (Tr. 347, 515).

In a follow-up visit on June 6, 2007, Claimant reported more pain and stiffness with hands and knees. (Tr. 389). Examination showed tenderness to her knees and increased rheumatoid nodules. Dr. Moeser indicated that he would like to start biologic. (Tr. 389).

The June 8, 2007 x-ray of Claimant's right hand showed mild osteoarthritic changes. (Tr. 408). The x-ray of her left hand showed minimal osteoarthritic changes. (Tr. 407).

On June 19, 2007, Claimant returned for follow-up treatment for depression. (Tr. 417). After changing to Wellbutrin, Claimant noted she is at times tearful and frequently irritable. Claimant reported starting Medifast program and losing weight. Dr Ryan decided to discontinue Wellbutrin and prescribe Effexor. (Tr. 417).

On July 5, 2007, Claimant reported severe stiffness and swelling of hands, knees, and feet especially in the morning and with inactivity. (Tr. 387). Examination showed tenderness in both knees. After discussing biologic therapy, Dr. Moeser decided to start Humira every other week. (Tr. 387).

In a follow-up visit on August 16, 2007, Claimant reported her depression improving on Effexor, and Dr. Ryan continued her medication. (Tr. 418-19).

On September 14, 2007, Claimant reported a flare up of her rheumatoid arthritis caused by her inability to use Humira due to a bladder infection. (Tr. 383). Examination showed synovitis receded from all joints except left leg swollen with synovitis. Dr. Moeser noted improvement of rheumatoid arthritis on Humira and injected her knees with Xylocaine. (Tr. 383).

In a follow-up visit with Dr. Khan on October 25, 2007, Claimant denied chest pain. (Tr. 344, 512). Claimant reported dieting and exercising to lose weight and has lost twenty-six pounds in the last six months. Claimant is tolerating inhalers well as well as her CPAP. (Tr. 344). Dr. Khan recommended that Claimant continue her current medication regimen and continue on CPAP and return in six months. (Tr. 345, 513).

On November 19, 2007, Claimant reported right sided knee pain limiting her ability to exercise. (Tr. 421). Claimant reported her sleep apnea being controlled. (Tr. 421).

On November 28, 2007, Claimant returned for follow-up treatment of right knee pain occasionally radiating down her leg to her foot. (Tr. 380). Dr. Moeser observed right knee anterolateral bursal swelling and tenderness and found Claimant to have right knee bursitis. (Tr. 380).

On February 27, 2008, Dr. Moeser prescribed physical therapy as treatment for her hip bursitis and tendinitis. (Tr. 441). On March 13, 2008, Dr. Moeser prescribed physical therapy as treatment for her arthritis and muscle pain. (Tr. 442). The record reflects that Claimant attended physical therapy sessions on March 24 and 31, 2008, and April 9, 17, and 21, 2008, and June 5, 2008 to address left arm arthritis and shoulder pain. (Tr. 444-52)

In the August 21, 2008 progress note, Claimant returned for treatment of her osteoarthritis and rheumatoid arthritis. (Tr. 457). Examination of her cervical and lumbar spine showed mildly reduced range of motion. (Tr. 459). Examination of her left shoulder showed moderately reduced range of motion. Examination of her right and left hip showed a full range of motion. (Tr. 459).

In a letter dated August 21, 2008, directed to Claimant;'s counsel, Dr. Moeser opined as follows:

> I am writing you this letter at the request and direction of Ms. Barbara VanLue. This in lieu of the form you had requested as I believe this letter will better represent her current clinical situation. I have been consulting on the case of Ms. Barbara VanLue from January 4, 2001 to the present time. She has a diagnosis of severe rheumatoid arthritis which has come under some control by the use of both oral and injectable immunosuppressant medications. She also has extensive primary and secondary osteoarthritis, bursitis, cervical spondylosis, and flat feet.
>
> Despite the above diagnoses, her true clinical picture is best represented by the severe problems of sleep apnea and restless leg syndrome as well as allergies, asthma, carpal tunnel syndrome, depression, diabetes, hypertension, status post left clavicular fracture, morbid obesity, polycystic ovaries, and thyroid disease. It is this long and exhaustive list of other medical diagnoses which renders her completely unable to work as she does not have the ability to concentrate or sometimes stay awake long enough to perform most tasks required of a worker trying to get through an 8-hour day, 40-hour week. Though she can function in self care activities, she is very limited in her activities of daily living outside the home. From a rheumatology point of view, she had reduced range of motion of many spine and peripheral joints as well as osteoarthritic bone spurring. From time to time she gets exacerbations of rheumatoid arthritis manifested by joint pain, stiffness, swelling and extreme pain and tenderness. However, as I mentioned above, it is a combination of all her medical diagnoses which render her completely and totally disabled. I do not expect the situation to improve.

(Tr. 455).

In a follow-up visit on February 3, 2009, Dr. Moeser noted the severity level of her rheumatoid arthritis to be moderate, and Claimant reported experiencing medicine benefit. (Tr.

490).  In the assessment/plan, Dr. Moeser noted her rheumatoid arthritis is controlled and her osteoarthritis is moderate, and Claimant must lose weight and exercise.  (Tr. 492).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security Act on July 31, 2006 but was no longer insured after December 31, 2006.  (Tr. 13).  Claimant has not engaged in substantial gainful activity during July 31 to December 31, 2006.  (Tr. 13).  The ALJ found that the medical evidence establishes that Claimant has the severe impairments of rheumatoid arthritis, degenerative disc and joint disease, and obstructive sleep apnea, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 13-14).  The ALJ Claimant has the residual functional capacity to perform a full range of sedentary work.  (Tr. 14).  The ALJ found that Claimant is able to perform her past relevant work as a bookkeeper.  (Tr. 16).  The ALJ found that Claimant was not under a disability from July 31 and December 31, 2006, the relevant time period.  (Tr. 16).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is

found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the claimant's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly give controlling weight to the opinion of Dr. Moeser and failed to find her mental impairments to be severe. Next, Claimant contends that the ALJ's RFC failed to properly reflect the functional limitations produced by her impairments.

A.    Weight Given to Treating Doctor's Opinion of August 21, 2008

Claimant contends that the ALJ failed to properly give controlling weight to the opinion of Dr. Moeser.

At the outset, the undersigned notes that Claimant has the burden of proving she was disabled prior to the expiration of her insured status on December 31, 2006.  To be eligible for disability benefits under Title II, Claimant must establish that she became disabled prior to the expiration of her insured status on December 31, 2006.  See Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007) ("Davidson's insured status expired on December 31, 2003, so like the Commissioner, we consider her condition before that date."); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) ("To be entitled to benefits Cox must prove she was disabled before her insurance expired on December 13, 1995.").  When an individual is no longer insured for Title II purposes, medical evidence of their condition will only be considered as of the date the individual was last insured.  "A non-disabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II."  Eggering v. Astrue, Cause No. 4:10cv821 TIA, 2011 WL 3904103 at *7 (E.D. Mo. Sept. 6, 2011).  "Evidence from outside the insured period can be used in helping elucidate a medical condition during the time for which benefits might be rewarded."  Cox, 471 F.3d at 907. "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider an individual's medical condition as of the date she was last insured."  Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); 20 C.F.R. 404.130.  New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition.  Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997).  Here, Claimant's

insured status expired on December 31, 2006. Therefore, the ALJ was not required to consider the medical evidence and opinions dated after that date unless it bears upon the severity of her condition before the expiration of her insured status.

Claimant's insured status expired on December 31, 2006. Therefore, the ALJ was not required to consider the medical evidence and opinions dated after that date. <u>Eggering</u>, 2011 WL 3904103 at *7. In rejecting Dr. Moeser's opinion, the ALJ noted Dr. Moeser was unable to specify on onset date. The undersigned finds that the evaluation was completed over eighteen months after the expiration of Claimant's insured status. While evidence of a claimant's condition subsequent to the expiration of his insured status may bear upon the severity of the claimant's condition before the expiration of his [] status," <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1169 (8th Cir. 1984), a claimant must nonetheless establish his disability existed prior to the expiration of his insured status. As such, the medical opinions set forth do not establish Claimant became disabled prior to the expiration of her insured status.

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" <u>Tilley v. Astrue</u>, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original). "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." <u>Wagner v. Astrue</u>, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted). Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" <u>Id.</u> (quoting <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1013-14 (8th

Cir. 2000)).

A treating physician's opinion may be, but is not automatically, entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Controlling weight may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96-2P, 1996 WL 374188 (July 2, 1996). Even a well-supported medical opinion will not be given controlling weight if it is inconsistent with other substantial evidence in the record. Id. "The record must be evaluated as a whole to determine whether the treating physician's opinion should control." Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009). When a treating physician's opinions "are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010( (quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)). "A treating physician's opinion does not automatically control, since the record must be evaluated as a whole." Perkins v. Astrue, 2011 WL 3477199, *2 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 815 (8th Cir. 2009)). The ALJ is charged with the responsibility of resolving conflicts among the medical opinions. Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008).

In a letter dated August 21, 2008, Dr. Moeser opined that Claimant could not perform any work due to the combination of her impairments, namely rheumatoid arthritis, osteoarthritis, cervical spondylosis, flat feet, sleep apnea and restless leg syndrome as well as allergies, asthma, carpal tunnel syndrome, depression, diabetes, hypertension, status post left clavicular fracture, morbid obesity, polycystic ovaries, thyroid disease, and depression.[2]

---

[2] As noted by the ALJ, most of the impairments listed by Dr. Moeser were not alleged to be disabling impairments in her application. The fact that Claimant did not allege these impairments in her application for disability benefits is significant, even though some evidence of the impairments was later developed. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir.

First, the undersigned notes that the medical source opinion cited by Claimant was completed two years after Claimant's alleged disability onset date and over eighteen months after her insured status expired. Indeed, as noted by the ALJ, Claimant reported doing well but started having symptoms after playing in a ball game. Examination showed some swelling of the joints of her left hand and significantly reduced left shoulder range of motion. Three months later, examination showed significant improvement in the left shoulder range of motion, and hand swelling to be resolved. Dr. Moeser determined that Claimant did not require intramuscular steroids.

The ALJ acknowledged that Dr. Moeser was a treating source, but that his opinion of August 21, 2008 was not entitled to controlling weight, because it was inconsistent with his prescribed medical treatment . See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). Likewise, Dr. Moeser's opinion is inconsistent with his own treatment notes. Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."). An ALJ may "discount or even disregard the opinion of a treating physician ... where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); Hackler v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his

2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression was later developed). Further, a physician's opinion that a claimant is "disabled" or "unable to work" does not carry "any special significance," 20 C.F.R. § 416.927(e)(1), (3), because it invades the province of the Commissioner to make the ultimate determination of disability. House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007).

or her RFC assessment, controlling weight is not given to the RFC assessment). Indeed, in his treatment notes Dr. Moeser never set forth any specific limitations on physical activity. Dr. Mouser's treatment notes do not reflect the degree of limitation he noted in his August 21, 2008 opinion. The undersigned concludes that the ALJ did not err in affording little weight to Dr. Moeser's opinion of August 21, 2008.

B.     Depression as a Medically Determinable Impairment

Claimant contends that the ALJ failed to consider Claimant's depression to be a severe medically determinable impairment.

To show an impairment is severe, a claimant must show that she has a (1) medically determinable impairment or combination of impairments which (2) significantly limits her physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c). 404.1521(a), §§ 416.920(c), 416.921(a). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). In other words, if it is not medically determinable or has no more than a minimal effect on the plaintiff's ability to work. Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996).

The ALJ found Claimant's depression not to be a severe medically determinable impairment. The undersigned finds that substantial medical evidence supports this determination.

Here, the ALJ's determination that Claimant's depression is not a severe impairment is supported by substantial evidence in the record. The ALJ rejected Claimant's claim of severe

impairment by finding that her depression did not restrict Claimant's activities of daily living, nor did it cause difficulties maintaining concentration, persistence, and pace.

The ALJ correctly relied on this medical evidence inasmuch as the medical records showed Claimant was prescribed Zoloft, and she reported the medication to be of benefit.  Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment controlled by medication or treatment is not considered disabling); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (impairments controllable or amenable to treatment do not support finding of total disability). See Kirby v. Astrue, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basis work activities; claimant bears the burden of establishing impairment's severity).  The record shows Claimant sought only minimal and conservative treatment and never required more aggressive forms of mental health treatment.  See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (absence of evidence of ongoing counseling or psychiatric treatment disfavors finding of disability); see Craig v. Chater, 943 F.Supp. 1184, 1189 (W.D. Mo. 1996) ("Allegations of a disabling impairment may be properly discounted because of inconsistencies such as minimal or conservative medical treatment.").

C.    Residual Functional Capacity

 Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly reflect the functional limitations produced by her impairments.

A claimant's RFC is what he can do despite his limitations.  Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).  The claimant has the burden to establish his RFC.  Eichelberger v.

Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. § 404.1545(a). The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. Id.

In his decision the ALJ thoroughly discussed the medical evidence of record, her lack of functional restrictions by any physicians, and Claimant's daily activities. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed significant long-term physical and/or mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective

complaints).  The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).  Further, the ALJ noted that Claimant's subjective complaints were not supported or consistent with the relatively minor clinical signs, symptoms, and findings of the objective medical evidence of record.

In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on her daily activities, or functional limitations.  Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant medical restrictions imposed by treating physicians supported the ALJ's decision of no disability).  Likewise, the ALJ  noted how the medical record is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment.  Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993)( lack of ongoing treatment is inconsistent with complaints of disabling condition).

The ALJ also properly considered the inconsistencies between Claimant's allegations and her activities.  The ALJ noted that Claimant is able perform light household chores, go grocery shopping, and drive.  See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001)

("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on daily basis, drive car infrequently, and go grocery shopping occasionally). Further, the ALJ noted how, by her own admission, Claimant is able to engage in a fair range of household chores and activities and attend her children's school activities. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."); See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain).

The ALJ also noted the primary aggravating factor on the record is Claimant's failure to take medication. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. See Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001) (claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain); Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that an ALJ can discredit subjective complaints of pain based on claimant's failure to follow a prescribed course of treatment); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding impairments which are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application of benefits).

Claimant also testified at the hearing that she uses a motorized wheelchair when grocery

shopping, but there is no objective medical evidence substantiating Claimant's need to use a wheelchair. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition required claimant to lie down for hours each day). Indeed, the record shows that there is no objective medical evidence substantiating Claimant's need to use a wheelchair. Further, the record shows Claimant never reported to any doctors her need to use a wheelchair. Likewise, no doctor determined Claimant needed to use a wheelchair as a medical necessity. Thus, if Claimant was not using a wheelchair out of medical necessity, she must be doing so out of choice. See Craig v. Chater, 943 F. Supp. 1184, 1188 (W.D. Mo. 1996); Cf. Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (whether there is a need to lie down is a medical question requiring medical evidence; record did not contain any evidence that medical condition required claimant to lie down for hours each day).

In support of his credibility findings, the ALJ noted that Claimant's impairments were controlled with treatment, see Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."), and that no physician who examined Claimant found her to have limitations consistent with disability. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined [claimant] submitted a medical conclusion that she is disabled and unable to perform any type of work."). The lack of medical

evidence supporting Claimant's complaints was a proper consideration when evaluating her credibility, see Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006), as was her failure to pursue more aggressive treatment. See Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999). The medical records showed Claimant was prescribed Zoloft, and she reported the medication to be of benefit. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment controlled by medication or treatment is not considered disabling); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (impairments controllable or amenable to treatment do not support finding of total disability). The record shows Claimant sought only minimal and conservative treatment and never required more aggressive forms of mental health treatment. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (absence of evidence of ongoing counseling or psychiatric treatment disfavors finding of disability). In January 2007, Dr. George considered her rheumatoid arthritis to be stable. Further, Dr. Ryan noted she does not appear to have a history of anxiety, and in a follow-up visit in February 2007, Claimant denied any history of anxiety. During a follow-up visit in November 2007, Claimant reported her sleep apnea being controlled.

Further, the undersigned notes that Claimant has worked despite her alleged disability. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms). The ALJ noted that although Claimant has been diagnosed with rheumatoid arthritis since 1996, she was able to perform substantial gainful activity as a bookkeeper for many years in spite of it. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the

ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability).

After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC those impairments and restrictions found to be credible. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). The ALJ determined that the medical evidence supported a finding that Claimant could perform the full range of sedentary work. (Tr. 14). In relevant part, the ALJ opined as follows: "The claimant has past relevant work experience as a bookkeeper. This job does not require more than a sedentary exertional capacity if it is performed as customarily performed in the national economy. Nor does it require more than a sedentary exertional capacity if it is performed as the claimant performed it. (Tr. 16) (internal citations omitted).

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a

whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included Claimant's conservative medical treatment, her lack of functional restrictions by any physicians, her daily activities, her failure to take medication as prescribed, and her ability to perform substantial gainful activity for years after the onset of rheumatoid arthritis. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different

physicians, and that time between doctor's visits was not indicative of severe pain).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.


        /s / Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  26th  day of September, 2012.